IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| HAMID MAHJOR, | ) |
|       Plaintiff, | ) |
| v. | )   1:17-cv-498 (LMB/IDD) |
| GREENPOINT MORTGAGE FUNDING, INC., et al., | ) |
|       Defendants. | ) |

## MEMORANDUM OPINION

This civil action arises out of plaintiff Hamid Mahjor's ("plaintiff" or "Mahjor") 2007 purchase of a home financed by a mortgage. According to plaintiff, his mortgage broker procured the loan by adding a fictitious name to the loan documents submitted to the lender, which plaintiff argues rendered the note and deed of trust void. Nevertheless, plaintiff occupied the house for nearly ten years without making any payments. In March 2017, defendant Greenpoint Mortgage, Inc., ("Greenpoint"), identified as the "lender" in the complaint, initiated foreclosure proceedings, with defendant Brock & Scott, PLLC ("Brock & Scott"), acting as the debt collector; defendant Trustee Services of Virginia, LLC ("TSV"), acting as the substitute trustee for the deed of trust; and defendant Mortgage Electronic Registration Systems ("MERS"), acting as nominee for the lender. Defendant FFC Properties, LLC ("FFC"), purchased the property at the March 2017 foreclosure sale.

On the theory that the underlying debt is void, plaintiff has brought this four count civil action seeking to invalidate the foreclosure sale,[1] alleging in Count 1 an Equitable Action to Rescind Void / Unlawful Foreclosure Sale [sic] against all defendants; in Count 3 slander of title against all defendants; in Count 4 violations of the Fair Debt Collection Practices Act ("FDCPA") against Brock & Scott and TSV; and in Count 5 a quiet title action against all defendants. Defendants have filed two motions to dismiss[2] in which they argue that plaintiff's complaint is untimely, that previous decisions in bankruptcy proceedings preclude him from relitigating the validity of the debt, and that he has failed to state a claim as to any of the counts. For the reasons that follow, the motions to dismiss will be granted.

## I. BACKGROUND

In early 2007, Mahjor applied for a loan with Greenpoint to finance his purchase of 21 Pickett Lane ("the Property"). 1st Am. Compl. ("Compl.") ¶ 9. His broker, Michael Milan ("Milan"), approved him for the loan. Id. ¶¶ 12–13, 21. The total purchase price was $696,000.00, with a $184,000.00 down payment. Id. ¶ 14.

On June 29, 2007, Mahjor signed a deed of trust for the property securing the mortgage. The deed of trust lists Edwin J. Vasquez ("Vasquez") as a borrower along with Mahjor, and Vasquez's signature appears just above Mahjor's on the last page. According to the complaint, "Vasquez is a fictitious individual whose information was fictitious and fraudulently relied on to process the loan / Note on June 29, 2007," allegedly without Mahjor's knowledge. Compl. ¶ 34.

---

[1] There were originally five counts. In his opposition to the motions to dismiss, plaintiff abandoned Count 2 ("Conspiracy to Commit Conversion"). Pl. Opp., [Dkt. 26] at 7. For clarity, this Bench Memorandum will refer to the remaining counts by their original numbers.

[2] One motion has been filed by Greenpoint, MERS, and FFC, and the other has been filed by Brock & Scott and TSV.

Although the deed of trust states that both Vasquez and Mahjor executed a promissory note in connection with the mortgage, [Dkt. 1-1] at 24, in fact only the Vasquez signature is on the promissory note, id. at 21, which is for $548,750.00,[3] id. at 17. The same day, Mahjor signed an Adjustable Rate Rider, on which Vasquez's signature also appears. Id. at 43.

Mahjor took possession of the Property in June 2007, and alleges he began making monthly payments to Greenpoint. Compl. ¶ 16–17. After five months,[4] a statement arrived identifying Vasquez as the borrower. Id. ¶ 20. The complaint alleges that Mahjor called Milan to ask who Vasquez was, and Milan replied not to worry because "this was a 'quitclaim situation.'" Id. ¶¶ 21–22. Mahjor did not understand this statement and asked additional questions, after which Milan became "angry and hostile." Id. ¶¶ 22–24. After Mahjor said he was going to call the Federal Bureau of Investigation ("FBI"), Milan responded "by threatening to cut off plaintiff's legs at the knees with a chain if he ever brought it up again or mentioned it to anyone." Id. ¶¶ 25–26. Mahjor immediately called the FBI, which launched an investigation. Id. ¶¶ 27–28. Milan was ultimately convicted of wire fraud and sentenced to 108 months' imprisonment. United States v. Milan, 1:09-cr-228 (TSE), [Dkt. 200] (E.D. Va. Mar. 12, 2010). According to the complaint, "the loans identified as having been procured via the fraud of Greenpoint, Milan and others, were all declared void by the federal court," Compl. ¶ 36, but plaintiff has not provided any court records to support that contention, nor has plaintiff explained how a court could issue such a declaratory judgment through a criminal case.

---

[3] This amount, added to the alleged down payment, equals more than the $696,000.00 purchase price; the complaint does not explain this discrepancy.

[4] It is not clear from the complaint whether plaintiff continued making payments on the mortgage after this point.

According to plaintiff, Milan also stole his $184,000 down payment, and took out an unauthorized second mortgage on the Property with Citibank to cover the purchase price. Id. ¶ 35. Beginning in 2009, plaintiff began receiving demands for payment from Countrywide. Id. ¶ 41. Plaintiff contacted the U.S. Attorney's Office ("USAO"), which reached out to Countrywide's lawyers, after which the demands stopped. Id. ¶ 43. A similar pattern ensued with Bank of America and Capital One. Id. ¶¶ 43–47.

At some point,[5] Brock & Scott began to contact plaintiff demanding payment on behalf of Greenpoint. Id. ¶ 48. This time, the USAO declined to intervene on plaintiff's behalf. Id. ¶ 49. On February 2, 2017, Brock & Scott notified plaintiff that a trustee's sale would take place at a public auction on March 9, 2017. [Dkt. 1-1] at 48. Plaintiff sought an emergency injunction in state court, which was denied. Compl. ¶¶ 58–59. Plaintiff recorded a lis pendens on the property, but TSV still conducted the sale on March 9, 2017, and FFC purchased the Property. Id. ¶¶ 61–62. Plaintiff, acting pro se, filed the original complaint in the Stafford County Circuit Court on February 21, 2017, which his counsel amended on April 3, 2017, to add Greenpoint and MERS along with all four of the instant counts. [Dkt. 1] ¶¶ 1–2; [Dkt. 1-2] at 2.[6] It is this First Amended Complaint which is presently before this Court.

Throughout these events, but unmentioned in the complaint, plaintiff was engaged in serial bankruptcy proceedings in this district. As Judge Ellis found on April 17, 2017, in affirming the bankruptcy court's dismissal of plaintiff's most recent Chapter 13 petition:

---

[5] The date is not specified in the complaint.

[6] The original complaint, filed pro se, alleged "Conspirency Forclosure [sic], Illegal Selling Action, and Pain & Suffering." Defendants timely removed the action to federal court on April 27, 2017. [Dkt. 1].

4

> Debtor, Hamid R. Mahjor, is a serial bankruptcy filer. The record reflects, as the
> Bankruptcy Judge concluded, that the underlying purpose of these bankruptcy
> filings has been to frustrate collection efforts by Debtor's creditors, who include
> (i) the lienholder(s) on Debtor's home, where he has resided for the past decade
> without making any mortgage payments, and (ii) the victim of a crime the Debtor
> committed, who is now entitled to restitution payments pursuant to a criminal
> judgment entered against the Debtor by the Stafford County Circuit Court.

[Dkt. 11-3] at 2. Judge Ellis then walked through the eight bankruptcy petitions that Mahjor has filed since 2008. See id. at 2–4. Each of those petitions was dismissed—two voluntarily and six by the bankruptcy court.[7] See id. The seventh and eighth petitions, which were "virtually identical, were dismissed by the bankruptcy court based on a finding that Mahjor was acting in bad faith and had a history of abusing the bankruptcy process. Id. at 4–5. During the hearing on his eighth petition, Mahjor gave inconsistent testimony on the status of his mortgage debt, "[a]t times . . . appear[ing] to acknowledge borrowing money to purchase his home, and at others . . . argu[ing] that he owes no money on his home." Id. at 8.

## II.     DISCUSSION

### A. Standard of Review

According to Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must set forth sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). The Court must "assume that the facts alleged in

---

[7] As Judge Ellis observed, Mahjor "voluntarily dismissed his third Chapter 13 case and refiled his fourth case within seven (7) days," suggesting that he was attempting to "manipulate and abuse the Bankruptcy Code by: (i) voluntarily dismissing the case in which the Bankruptcy Judge had relieved his primary creditor, the lienholder on his home, from the effects of the automatic stay, and (ii) refiling a Chapter 13 case days later which would have re-imposed the automatic stay on his creditors." [Dkt. 11-3] at 3 n.1.

the complaint are true and draw all reasonable inferences in the plaintiff's favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), but only to the extent that those allegations pertain to facts rather than to legal conclusions, Iqbal, 555 U.S. at 678. Moreover, although a court may not ordinarily "consider any documents that are outside of the complaint" without converting the motion "into one for summary judgment, . . . . [t]here is . . . a narrow exception 'for . . . official public records[,]'" among other documents. Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (4th Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

**B. Timeliness**

Defendants argue that plaintiff's claims are untimely based on Virginia's two-year statute of limitations for actions sounding in fraud. Plaintiff's only response is that his note is "void ab initio" and therefore can "be challenged at any time by anyone." Pl. Opp., [Dkt. 26] at 4. Although defendants' argument does not address each count with sufficient specificity, their position is largely correct.

Counts 1 and 5 are equitable in nature. In Virginia, "[i]t is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity." Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity, 266 Va. 455, 467 (2003) (internal quotation omitted). The shared premise of plaintiff's equitable action to rescind the foreclosure sale and his quiet title action is that the promissory note was secured by fraud—namely, the inclusion of the fictitious Vasquez as a party—and therefore void ab initio. Pl. Opp., [Dkt. 26] at 3–4, 6. Setting aside the viability of this theory for the moment, it is clear that the appropriate legal analog is fraud.

6

In Virginia, a fraud action must be brought within two years of the date that the fraud occurred, or one year of the date on which plaintiff should reasonably have discovered the fraud, whichever results in the longer period. Va. Code. § 8.01-243. Because plaintiff acknowledges receiving the statement with Vasquez's name on it within five months of signing the loan documents on June 29, 2007, Compl. ¶ 20, the longer of the periods is two years from the date on which the fraud allegedly occurred—June 29, 2007. Because these claims were not brought until April 6, 2017, nearly eight years too late, Counts 1 and 5 are clearly time barred.[8]

Count 3, the remaining state law claim, is for slander of title. Currently, "there is no controlling authority indicating which statute of limitations applies to slander of title actions" in Virginia. Koz v. Wells Fargo Home Mortg., 83 Va. Cir. 96, at *5 (Va. Cir. 2011). There are three options for the applicable limitations period: the one-year period for defamation; the two-year "catch-all" period in Va. Code § 8.08–248; or the five-year period applicable to injury to property. Id. at *5–*6. This cause of action is titled "slander of title" because it "involves allegations of 'falsehoods which are not personally defamatory, and yet cause pecuniary loss,'" id. at *5 (quoting Prosser and Keeton on the Law of Torts, § 128 at 962 (5th ed. 1984)), meaning it is more properly considered "a form of interference with economic relations, and that the one-year statute of limitations for defamation is not applicable," id. Similarly, the injury to property limitation is "narrowly defined to include only those acts which 'involve allegations of wrongful exercise of control over the property of another,'" id. (quoting Willard v. Moneta Bldg. Supply, 262 Va. 473, 480 (2001)), rather than conduct that "does not alter the condition or availability for use of the property[,]" id. Accordingly, the two-year catch-all provision is the correct limitations period for slander of title. See id.

---

[8] In the interest of completeness, the merits of these counts will nevertheless be addressed.

Plaintiff has identified six allegedly "slanderous documents," identified as Exhibits B, C, D, F, G, and H to the complaint. Compl. 12. Exhibits B and C were created (and signed by plaintiff) in 2007, meaning they are time-barred. Similarly, Exhibit F was created in 2008, Exhibit G in 2011, and Exhibit H in 2013, making all of them time-barred as well. Only Exhibit D, which was created in 2016, is recent enough to fall within the limitations period. Accordingly, Count 3 will only be considered as to Exhibit D.

Count 4 alleges violations of the FDCPA against Brock & Scott and TSV. Subject to certain objections not relevant here, the FDCPA has a one-year statute of limitations period that begins to run when the communication alleged to violate the FDCPA is sent. 15 U.S.C. § 1692k(d); Brooks-McCollum v. Aspen Property Mgmt. Co., 551 F. App'x 677, 680 (4th Cir. 2014) The complaint does not specify when the communications from Brock & Scott and TSV allegedly began; however, the only communication from either that he has attached to the complaint is dated February 2, 2017. Accordingly, the FDCPA claim is not time-barred with respect to that communication.[9]

Plaintiff's argument that no statute of limitations applies is so frivolous that it barely warrants a response. The only case he has cited, Singh v. Mooney, deals with the legal enforceability of court orders entered in the absence of subject-matter jurisdiction, not with the enforceability of contracts fraudulently procured. See 261 Va. 48, 51–52 (2001). If plaintiff were correct that fraud rendered a contract subject to challenge "at any time by anyone," Pl. Opp., [Dkt. 26] at 4, there would of course be no need for a statute of limitations. The existence

---

[9] To the extent that plaintiff relies on any other attachment to the complaint, an FDCPA claim would be time-barred, because all other exhibits were created on February 3, 2016, or earlier, and plaintiff has not alleged that he was unaware of those publicly recorded documents.

8

of Va. Code. § 8.01-243, providing for a statute of limitations for fraud claims, is proof that plaintiff's argument is meritless.

To summarize the conclusions in this section, Counts 1 and 5 are clearly time barred as equitable actions that would have been barred by the applicable legal limitations period; Count 3 is time barred with respect to all alleged statements except Exhibit D to the complaint; and Count 4 is time barred with respect to any statements made before April 6, 2016.

C. **Issue Preclusion**

Defendants argue that plaintiff is precluded from relitigating the enforceability of the mortgage debt by virtue of his bankruptcy proceedings. Once again, plaintiff's only response is that the note was void <u>ab</u> <u>initio</u> in light of the fraud and therefore that the bankruptcy court "has no more power to 'make' the contract a 'thing,' let alone a valid thing, than the Defendants." [Dkt. 26] at 4.[10]

The doctrine of issue preclusion (formerly known as "collateral estoppel") "operates to bar subsequent litigation of those legal and factual issues common to [two successive] actions that were 'actually and necessarily determined by a court of competent jurisdiction' in the first litigation." In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996). The Supreme Court has "concluded explicitly that principles of collateral estoppel apply in dischargeability proceedings in bankruptcy." In re McNallen, 62 F.3d 619, 624 (4th Cir. 1995). Because bankruptcy proceedings are federal, the federal law of issue preclusion applies. See Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991).

---

[10] This phraseology is only slightly more intelligible when one has read an earlier portion of plaintiff's brief, which presents the syllogism, "Void things are as no things." Pl. Opp., [Dkt. 26] at 3.

9

Under federal law, a party is precluded from relitigating an issue of fact or law that "is actually litigated and determined by a valid and final judgment, [when] the determination is essential to the judgment[.]" B & B Hardware, Inc. v. Hargid Indus., Inc., 135 S. Ct. 1293, 1303 (2015) (quoting R.2d Judgments § 27, p. 250 (1980)). Federal law permits a party who was not involved in the original action to raise issue preclusion, so long as the party against whom the preclusion defense is asserted was a party to the first action. See Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 331 (1979). In colloquial terms, this is called "offensive" issue preclusion. Id.

In plaintiff's most recent appeal of a bankruptcy proceeding, Judge Ellis found that "[a]fter hearing testimony from [Mahjor] and two other witnesses, as well as argument from [Mahjor] and trustee, Bankruptcy Judge Kenney found that [Mahjor's] eighth bankruptcy case was filed in bad faith with the purpose of . . . further delaying foreclosure proceedings on the home which he had been living in since 2007 without making a single mortgage payment." In re Mahjor, 1:16-cv-1540, [Dkt. 18] at 4. That conclusion necessarily includes a finding that Mahjor's debt is valid and enforceable; otherwise, it would not have amounted to "bad faith" for Mahjor to have filed a bankruptcy petition seeking to avoid it.

Nor was his most recent Chapter 13 petition the only time when the bankruptcy court opined on the validity of the debt at issue in this civil action. During plaintiff's third bankruptcy proceeding, the bankruptcy court conducted a hearing on that very question at which Mahjor appeared in person and was represented by counsel. Def. Brock & Scott and TSV's Ex. 10, [Dkt. 16-5] at 1. After that hearing, the bankruptcy court entered an order denying Mahjor's request to reinstate the automatic stay imposed by the bankruptcy proceedings on Greenpoint's

10

efforts to enforce the deed of trust.[11] Id. In so doing, the bankruptcy court found that the debt was valid and enforceable because the "defrauded party in the charged transaction . . . was the lender, not the debtor, and the court kn[ew] of no authority—and certainly none ha[d] been cited—for the proposition that a lender who has been tricked into making a mortgage loan to a borrower who was not financially qualified is thereby barred from enforcing the mortgage if the loan goes into default." Id. at 2. In other words, the bankruptcy court has rendered a final determination about the validity of Mahjor's mortgage debt not just once, but multiple times. Accordingly, he is precluded from relitigating that factual issue in this civil action.

Because all four counts depend on Mahjor's ability to prove that the debt in question is unenforceable,[12] and because he is precluded from making that argument, the complaint must be dismissed in its entirety.

### D. Equitable Action to Rescind Void / Unlawful Foreclosure Sale [sic] (Count 1)

Count 1 fails on the merits as well. In the complaint, Mahjor admits that he sought to obtain the mortgage loan in question and that he occupied the property for nearly a decade. He does not claim that he made any mortgage payments after the first five months. As the bankruptcy court observed, even if fraud occurred to induce the lender to make this loan, Mahjor was not the victim of the fraud, he was a beneficiary of it. Def. B&S and TSV's Ex. 10, [Dkt. 16-5] at 2. There is therefore no equitable basis to permit Mahjor to back out of the loan agreement. It has long been established that

---

[11] Although this was not a final judgment, it was an appealable "final order." Grundy Nat'l Bank v. Tandem Min. Corp., 754 F.2d 1436, 1439 (4th Cir. 1985).

[12] Counts 1 and 5 require showing that he holds valid title to the Property. Count 3 requires proving that the allegedly slanderous statement was false. Count 4 requires proving that the debt collectors were attempting to collect a debt contrary to law or that they sent false or misleading statements regarding the debt.

11

> [w]here a party desires to rescind upon the ground of mistake or fraud, he must, upon discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred.

United States v. Idlewild Pharm., Inc., 308 F. Supp. 19, 23 (E.D. Va. 1969) (quoting Grymes v. Sanders, 93 U.S. 55, 62 (1876)). Notwithstanding his self-professed belief that fraud occurred just five months after he took possession of the Property, plaintiff continued to live there for nearly ten years. Under those circumstances, far from excusing Mahjor from his obligations under the loan agreement, equity demands that he be bound by that agreement.

### E. Slander of Title (Count 3)

Count 3 is equally meritless. In Virginia, the "elements of slander of title are: (1) that the defendant maliciously published false words, (2) that the false words disparaged plaintiff's property, and (3) that the publication caused plaintiff to suffer special damages." Koz, 83 Va. Cir. 96, at *3 n.3. Plaintiff's claim runs aground because he cannot prove that the statements in question are false.

The only allegedly slanderous statement that is not time barred, Exhibit D to the complaint, is the appointment of TSV as substitute trustee. That document states that "by deed of trust dated June 29, 2007 and recorded on July 11, 2007 . . . among the land records of Stafford County, Virginia, Edwin J. Vasquez and Hamid Reza Mahjor conveyed all that certain property hereinafter described in trust to Suellen Wholfarth, Trustee(s), in trust, to secure payment of the sum of $548,750.00 evidenced by a certain promissory note to [Greenpoint][.]" [Dkt. 1-1] at 45. Presumably, this is the statement in Exhibit D that plaintiff alleges is false, as he contends that "there is no legal deed of trust with any power of sale." Pl. Opp., [Dkt. 26] at 5.

Quite simply, plaintiff is wrong. Facially, Exhibit D's description of the Deed of Trust is obviously correct. See Compl. Ex. B, [Dkt. 1-1] at 23–37. To the extent that plaintiff argues that the Deed of Trust is invalid because of fraud perpetrated by Milan and/or Vasquez, that argument fails both because plaintiff is precluded from raising it by the earlier adjudications of the bankruptcy court and this court, and because he has identified no legal basis for invalidating the debt as described above. Accordingly, the slander of title claim must be dismissed.

### F. Quiet Title (Count 5)

Plaintiff's quiet title claim in Count 5 is similarly flawed. "A person seeking to quiet title must plead that [he] has superior title over the adverse claimant." Squire v. Va. Hous. Dev. Auth., 287 Va. 507, 520 (2014). Where a party's complaint "reveals that [he] ha[s] not satisfied all legal obligations to the party in interest," the quiet title action has not been adequately pleaded. Id. Here, plaintiff alleges that he occupied the Property for nearly 10 years, but he does not allege that he made any payments on his mortgage loan after the first five months.[13] Accordingly, plaintiff has not adequately pleaded that he has "satisfied all legal obligations to the party in interest." For this additional reason, Count 5 fails.

### G. FDCPA Violations (Count 4)

Finally, plaintiff has alleged that the law firm Brock & Scott and substitute trustee TSV, as debt collectors, have violated multiple provisions of the FDCPA, specifically the following:

- 15 U.S.C. § 1692e(2)(A): falsely representing "the character, amount, or legal status of any debt;"

- 15 U.S.C. § 1692e(5): threatening "to take any action that cannot legally be taken;"

---

[13] Plaintiff does not dispute this fact in his opposition, instead arguing that "the trustee had nothing to sell" because the loan "is a legal nullity and void ab initio." [Dkt. 26] at 6. For all the reasons stated above, that is not correct.

13

- 15 U.S.C. § 1692e(11): "failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose;"

- 15 U.S.C. § 1692e(12): "the false representation or implication that accounts have been turned over to innocent purchasers for value;"

- 15 U.S.C. § 1692f(1): the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law;"

- 15 U.S.C. § 1692f(6)(A): "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest;"

- 15 U.S.C. § 1692g(b): failure to adequately respond to a disputed debt with the appropriate paperwork.

All of plaintiff's claims under §§ 1692e and 1692f depend on his ability to prove that his mortgage loan is invalid and unenforceable. For all the reasons stated above, he cannot succeed in making that argument. As a result, these claims must be dismissed.[14] Plaintiff's claim under § 1692g(b) is also inadequately pleaded because the complaint contains no allegation that Mahjor "notifie[d] the debt collector in writing within the thirty-day period" that he was disputing the debt, as required to trigger § 1692g(b)'s obligations.[15] Accordingly, to the extent

---

[14] The claim under § 1692e(11), regarding the deficiency of the initial communication from the debt collectors, fails because plaintiff has not pleaded any facts regarding the initial communication from B&S and TSV, much less that they failed to contain the required notice. Such a cursory pleading cannot survive a 12(b)(6) motion under Twombly and Iqbal.

Moreover, the only communication from either Brock & Scott or TSV attached to the complaint is a letter from Brock & Scott dated February 2, 2017, which contains, in all-caps, bolded, italicized print: "THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." [Dkt. 1-1] at 48.

[15] The only potentially relevant allegation is that Mahjor "advised B&S about the fraud involved, the prosecution of Milan, and the fact the [sic] note and deed of trust were void given that fraud." Compl. ¶ 51. This paragraph contains no allegation regarding the timing of plaintiff's communication, and does not state whether it was in writing. See id.

that plaintiff's FDCPA claims are not time-barred, they are inadequately pleaded and must be dismissed.

### III. CONCLUSION

For these reasons, the Motions to Dismiss filed by Greenpoint, MERS, and FFC [Dkt. 10] and Brock & Scott and TSV [Dkt. 13] will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 23rd day of June, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge